## Carrie Pate, Appellee, v. Gus Blair Big Muddy Coal Company, Appellant.

1. MINES AND MINERS—*what are dangerous places within meaning of statute.* Held, that a pit car, clevis and pin, cable, and the various parts of a rope haulage system, were not mere tools or appliances with which the employes worked as distinguished from working places and that the statute requiring the mine examiner and the mine manager to examine and mark all dangerous places with danger signals, etc., before the employes are permitted to enter the mine, was applicable.

2. MINES AND MINERS—*what object of statute, requiring marking dangerous places.* The principal object of the statute in having the mine examiner to mark and report dangers to the mine manager, is that the mine manager may find them and make them safe. The danger signals also are to prevent other employes from casually going to said danger while in the mine; but as to all employes who will be exposed to the danger while at work or going to or from work, the statute is mandatory that they must not be allowed to enter the mine for work unless under the direction of the mine manager. The object of the statute is safety to the employes, and the question of whether or not it will make a job for an employe or cost the mine owner the price of a job, is not to be figured in the interpretation of the statute.

3. MINES AND MINERS—*what not defense to action charging wilful violation.* In an action charging willful violation of the Mines

and Miners Act, neither the defense of assumed risk nor that of contributory negligence is applicable.

4. MINES AND MINERS—*what competent upon question of knowledge and willfulness*. Where an injury resulted by reason of a pin in the clevis working out and causing a car to be detached from a cable, the evidence not being clear as to just what caused such pin so to work out, it is competent in order to show knowledge or willfulness on the part of the mine owner to introduce evidence with respect to the condition of the machinery with reference to the defects alleged in the declaration, the number of times the friction blocks failed to work and the effect thereof, the number of times the clevis and pin became detached from the cars, etc., and the vibrations of the rope and the effect thereof, if known prior to the date of the injury.

5. INSTRUCTIONS—*when upon question of damages erroneous*. An instruction upon this subject, as follows:

"If you find the defendant guilty and that the plaintiff has sustained damages as laid in the declaration, then, in assessing the plaintiff's damages, you may take into consideration the age of the deceased and his ability to earn or acquire money before and at the time of his death, if shown by the evidence; his relationship to the plaintiff and the duty thereby devolving upon him to support her, if shown by the evidence; the wages, if any, derived from his ordinary occupation or business before his death, if shown by the evidence; and all other matters whereby said widow might reasonably expect to derive pecuniary benefit from the continued life of the deceased (in so far as the same are shown by the evidence), and from all the facts and circumstances in evidence, taken in connection with your own knowledge and experience in the ordinary affairs of life, you should award the plaintiff such pecuniary damages, as, in your sound discretion, you may believe from all the evidence said widow has by his death, sustained in her means of support not exceeding $10,000,—"

is erroneous in that (1) it does not limit the jury in determining the amount of damages to the evidence bearing upon that question, (2) it permits the exercise of too broad a discretion and (3) it does not explain the reason for the limit placed upon the amount of recovery.

6. INSTRUCTIONS—*when upon question of damages closely scrutinized*. Instructions upon the question of damages will be closely scrutinized where the damages awarded are large.

7. TRIAL—*when remarks of counsel ground for reversal*. Remarks of counsel outside of the evidence in referring to what the Supreme Court has said, even though objections thereto may have been sustained, will constitute ground for reversal.

8. EVIDENCE—*what proper upon cross-examination*. Evidence as to whether or not a mine manager is licensed is proper on cross-examination where he has testified as an expert engineer.

Action in case. Appeal from the Circuit Court of Jackson county; the Hon. W. N. BUTLER, Judge, presiding. Heard in this court at

the March term, 1910.    Reversed and remanded.    Opinion filed
November 12, 1910.

**Statement by the Court.** This was an action in case by appellee against appellant for the death of her husband, a trip rider in appellant's coal mine, by reason of the alleged willful violation of the Mines and Miners Act. On a trial by jury a verdict and judgment were rendered in favor of appellee for $8,000. It is charged in a three count declaration that the defendant had and maintained a rope haulage system on a railroad track located on a steep incline in the main east entry of appellant's mine; that said system consisted of an iron cable attached to certain drums and extending along said track over certain rollers and through certain sheave wheels for a distance of 1,500 feet, the same being operated by a stationary steam engine; that in hauling with said system the cable was attached to the front end of a loaded trip of about twelve cars, by means of an iron clevis and pin attached to an iron link or hook, the other end of said cable being similarly attached to the rear end of the trip; that when the trip of cars was pulled up the incline to the bottom of the mine, the cable was released therefrom, and in like manner attached to a trip of empties for the return trip into the mine; that there were four defective parts and dangerous places in this system, (1) on the engine by reason of the disc wheels or balance wheels being broken off; (2) at the friction blocks used to apply to said drums, by reason of their being worn and failing to work, thereby causing the drum to slip in the cable; (3) at the drum where the wire rope would not wind properly, thereby causing the rope to unduly vibrate; (4) at the attachment of the clevis and pin which was so worn that it would readily become detached from the loaded cars running up the incline, whereby said haulage system was dangerous to operate. Alleges that the defendant willfully failed to have this rope haulage system examined by a duly licensed mine manager and a conspicuous mark

placed at all of said dangerous places, etc.; that the mine manager willfully failed to see that said dangerous places were properly marked and danger signals there displayed as required by statute; and willfully permitted the said deceased to enter said mine for work and not under his direction before said dangerous places were made safe; that in consequence thereof the pin and clevis connecting the cable with the trip became detached from the loaded trip the deceased was riding up the incline and the cars ran back on, and killed him, etc.

The evidence tends to show that the clutch blocks would not hold the rope, but would slip and cause the trip to stop on the incline; that the rope would vibrate and that this vibration would cause the clevis pin to work up and out of the bottom hole of the clevis and allow the loaded trip to run down the incline; that the disc or balance wheel on the engine was broken off, but that this was not the cause of the injury. The deceased was killed by reason of the clevis and pin becoming detached from the car and rope and letting the loaded trip run down over him while he was trying to block them with the dog for that purpose on the rear car.

Denison & Spiller, for appellant; George C. Mastin, of counsel.

John M. Herbert and W. A. Schwartz, for appellee.

Mr. Justice Duncan delivered the opinion of the court.

It is insisted by appellant that the court erred in refusing to direct a verdict of not guilty, because the evidence does not tend to prove the declaration or any count thereof. As the judgment will have to be reversed and the cause remanded for further proceedings, we do not deem it proper to discuss the evidence

on its merits. We think however that the cause was properly submitted to the jury. We have examined the argument of appellant's counsel to the effect that the pit car, clevis and pin, cable, and in fact all the parts of the rope haulage system are mere tools or appliances with which the employes work, as distinguished from working places, and that the statute requiring the mine examiner and the mine manager to examine them before the men are permitted to enter the mine for work and properly mark all dangerous places with danger signals, etc., does not apply to this haulage system. We do not regard this haulage system or any of its parts as coming within the class of instrumentalities denominated as "tools", such as a hammer, ax, saw, etc., any more than would the elevators in a grist mill or a coal washer that are constructed to elevate or carry the wheat, flour or coal from one part of the mill or washer to another. The haulage system in question is a permanent fixture in the mine, just as much so as is the mill machinery or the machinery of a coal washer above mentioned. The fact that the rope moves a distance of 1,500 feet winding backwards and forwards on drums or rollers to do the hauling does not make it any less a fixture, or cause it to be regarded as a mere tool, as a shovel or pick, or even like a work mule, so far as the provisions of this statute are concerned. The elevators in the mill or coal washer travel in some cases long distances, carrying their loads of wheat or flour or coal or refuse, and every bolt or screw or pin or hook holding the machinery in place or repair is a part and parcel of the fixture, just as certainly as is the stationary engine that furnishes the power. This haulage system was used for forwarding the coal to the bottom of the mine for the purposes of hoisting and passing it into the channels of trade, and its entire operation was a part of the operation of the mine and within the protection of the statute, when pulling a trip of cars up this incline. We can see no practical difference in this ma-

chinery and that described in case of Spring Valley Coal Co. v. Greig, 226 Ill. 511, as to operation or as to character of the machinery; and we are unable to discover any reason why the statute is not just as applicable to the machinery in question here as to that described in the case before the Supreme Court, wherein it is positively announced that that machinery came within the requirements of the statute. "Who, then, should be kept out of a mine until such conditions have been made safe?" and "How could this provision (marking dangers) apply to a rope, a pit car, a coupling pin, a lever upon an engine, or to any other tool?" —we are asked by appellant's counsel. To the first question we answer, only those employes should be kept out of the mine who will be exposed to the danger while at their work or in going to and from their work. We see no difficulty in marking any part of this system by a danger signal. Counsel do not seem to understand or appreciate the fact that the danger signal is not intended as the only means of protection to the mine employe. The statute absolutely forbids the mine manager to permit any mine employe while at work to be exposed to a danger found by the examiner, unless under his directions as mine manager, until the dangers are made safe. The principal object of the statute in having the mine examiner to mark and report the dangers to the mine manager, is that the mine manager may find them and make them safe. The danger signals also are to prevent other employes from casually going to said danger while in the mine; but as to all employes who will be exposed to the danger while at work or going to or from work, the statute is mandatory that they must not be allowed to enter the mine for work unless under the direction of the mine manager. How can safety be secured for an employe if he is to be exposed to a known danger every minute of the time he is at work? The object of the statute is safety to the employes, and the question of whether or not it will make a job for an employe, or

cost the mine owner the price of a job, is not to be figured in the interpretation of the statute. That the old common law doctrine, that when the employe is warned or knows of the danger he assumes the risk, or that if he is guilty of contributory negligence he cannot recover, cannot be invoked as a defense under this statute, is so well established in this state now, in the application of this statute, as to make further discussion thereof unnecessary. So the fact that the deceased undertook to stop the cars by putting the dog into action, after he had already gained a place of safety, is no defense in this case, if a case be made for the plaintiff under the statute.

The lower court erred in giving appellee's instruction No. 4 which is as follows:

"4. If you find the defendant guilty and that the plaintiff has sustained damages as laid in the declaration, then, in assessing the plaintiff's damages, you may take into consideration the age of the deceased and his ability to earn or acquire money before and at the time of his death, if shown by the evidence; his relationship to the plaintiff and the duty thereby devolving upon him to support her, if shown by the evidence; the wages, if any, derived from his ordinary occupation or business before his death, if shown by the evidence; and all other matters whereby said widow might reasonably expect to derive pecuniary benefit from the continued life of the deceased (in so far as the same are shown by the evidence), and from all the facts and circumstances in evidence, taken in connection with your own knowledge and experience in the ordinary affairs of life, you should award the plaintiff such pecuniary damages as, in your sound discretion, you may believe from all the evidence said widow has, by his death, sustained in her means of support, not exceeding ten thousand dollars.''

This character of instruction has been repeatedly condemned by our Supreme Court. In determining the amount of damages to be recovered in this case the jury should only consider the evidence bearing upon the question of the amount of damages the plaint-

iff had sustained and that are recoverable, if any. They should not consider "all the facts and circumstances in evidence," as they were instructed to do in this instruction, in determining the amount of damages to be awarded. The death may have been a very sad or shocking one that would elicit a great deal of sympathy and feeling. These facts as well as many others that might come into a case ought not be considered in determining the amount of damages to be awarded. The expression, "you should award the plaintiff such pecuniary damages as, in your sound discretion, you may believe from all the evidence said widow has, by his death, sustained in her means of support, not exceeding ten thousand dollars," makes this instruction still more objectionable. The two phrases, "in your sound discretion," and, "not exceeding ten thousand dollars," are calculated to mislead a jury. By the word discretion, as ordinarily used, is meant unrestrained choice or will. In the use of the latter expression, "not exceeding ten thousand dollars," no reason or explanation is given to the jury for being so informed. If the jury had been informed that that was the amount sued for, and that the rule of law is that a plaintiff cannot recover more than the amount sued for, it would not have been so objectionable. As the instruction reads it seems to simply convey to the minds of the jury the idea that $10,000 is the maximum sum the court considered should be awarded, in case damages were awarded. Such expressions as to damages have been allowed to pass without causing a reversal; but when the damages are very high and apparently excessive, as in this case, they have usually been considered as reversible error. City of Chicago v. Gilfoil, 99 Ill. App. 88; I. C. R. R. Co. v. Johnson, 221 Ill. 42; Muren Coal and Ice Co. v. Howell, 204 Ill. 515.

Another very strong reason why this verdict should not be permitted to stand is that counsel for appellee used prejudicial and unfair remarks to the jury in

their arguments, not based on the evidence in the case. The following are the most objectionable ones: "This boss denied he made a statement to the deceased, Pate, as to throwing the dog on the car when an accident happened, and that is one of the things of these bosses, that in order to be a good boss you must be a good witness;" "The court says we have enough in our declaration to go to the jury on;" "The Supreme Court says this is a good case." Comment is unnecessary as to the effect of such unfair methods. True, it is, the court sustained an objection to them, but that does not remove the effect on the jury. Counsel must understand that when there is any indication in the record at all that they may have profited by such unfair means, this court will not sustain the verdict.

We think the evidence as to whether or not the mine manager was licensed was proper on cross examination in view of the fact that he was testifying as an expert engineer. Of course no fault could be attributed to the company because he was not licensed.

In conclusion we will say that it is not made very clear by the evidence just what caused the pin in the clevis to work out and cause the car to be detached from the cable. The condition of the machinery with reference to the defects alleged in the declaration, the number of times the friction blocks failed to work and the effect thereof, the number of times the clevis and pin became detached from the cars, etc., and the vibrations of the rope and the effect thereof, if known, prior to the date of the injury, are competent evidence as tending to show knowledge or willfulness on the part of the mine owner, and are not objectionable because remote.

For the errors above indicated the judgment is reversed and the cause remanded for further proceedings.

*Reversed and remanded.*