DOUGLAS DIETZ, Appellee, *vs.* THE BIG MUDDY COAL AND
IRON COMPANY, Appellant.

*Opinion filed April 23, 1914—Rehearing denied June 4, 1914.*

1. APPEALS AND ERRORS—*constitutional questions are involved
where the appeal was perfected before publication of opinion de-
ciding such questions.* A case is properly brought to the Supreme
Court on the ground that it involves constitutional questions, where
the appeal was perfected before the publication of an opinion of
the Supreme Court in another case deciding the same questions.

2. WORKMEN'S COMPENSATION—*an employee need not be under
the act in order to cut off employer's common law defenses.* It is
the status of the employer, and not that of the employee, which
determines whether the common law defenses are lost to the em-
ployer, and it is not necessary that the employee be under the act
in order to cut off the employer's common law defenses.

3. SAME—*when defenses of assumed risk, fellow-servants and
contributory negligence are not available.* The defenses of as-
sumed risk, fellow-servants and contributory negligence are not
available, under the Workmen's Compensation act of 1911, as to
employers who have elected not to pay compensation in accord-
ance with its provisions.

4. SAME—*parties are under the act unless they elect not to be.*
It was the intention of the legislature to make the Workmen's
Compensation act applicable to all employers and employees with-
in the enumerated employments and automatically to subject them
to the law, without any affirmative action on their part, unless
written notice of an election not to be governed by the act be filed
with the State Bureau of Labor Statistics.

5. SAME—*section 1 of Workmen's Compensation act of 1911
construed.* In section 1 of the Workmen's Compensation act of
1911 the phrase, "any employee who has elected to accept the pro-
visions of this act," should be read as "any employee who has not
elected to not accept the provisions of this act."

6. STATUTES—*rule of construction of involved clauses.* In the
construction of involved clauses courts may interpolate words and
phrases or strike out redundant and unnecessary language to give
effect to the general legislative intent as the same appears from a
consideration of the whole scope of the act.

7. EVIDENCE—*when statement that plaintiff is a poor person is
admissible.* Upon the trial of a personal injury case it is proper
to permit the plaintiff to state that he went to work before he was

well because he was without any means to support his wife and children, in order to explain an apparent inconsistency, brought out by cross-examination, that he did, in fact, go to work at a date prior to the time when he stated that he was able to work.

8. CONSTITUTIONAL LAW—*the Workmen's Compensation act of 1911 is not unconstitutional.* The Workmen's Compensation act of 1911, being elective, is not unconstitutional. (*Deibeikis* v. *Link-Belt Co.* 261 Ill. 454, followed.)

APPEAL from the Circuit Court of Jackson county; the Hon. A. W. LEWIS, Judge, presiding.

DENISON & SPILLER, and JOHN M. HERBERT, (MASTIN & SHERLOCK, of counsel,) for appellant.

MARTIN & GLENN, for appellee.

Mr. JUSTICE VICKERS delivered the opinion of the court:

This is an action of case, in which all of the three counts of the declaration charge common law negligence. The first and second counts are in substance the same, but the third or additional count alleges that the injury occurred in a different manner. All of the counts allege that appellant was operating a coal mine in Williamson county on April 21, 1913, and had prior thereto elected not to provide and pay compensation to injured employees under the statute of 1911 known as the Workmen's Compensation act; that appellee was on said date an employee of appellant in the capacity of a blacksmith's helper and was working in and about the mine of appellant; that appellee had accepted all the provisions of the Workmen's Compensation act and was at that time bound thereby. The declaration charges in the first and second counts that appellant negligently ordered appellee to put a bolt through a certain platform which was immediately above a certain chute and by which bolt said chute was to be suspended; that appellant knew, or should have known, that the place where appellee was required to stand in order to obey the said order

was a dangerous place for the performance of said work; that there was no safe place where the appellee could stand while inserting said bolt, but to carry out the order he was required to stand upon the end of said chute, which was metal, and reach with both hands above his head and stand upon his toes without any brace to steady or support himself, and that while thus attempting to insert the said bolt, standing upon the slanting metal of the chute, he lost his balance and slipped and fell, causing the injuries complained of. Appellant filed a plea of not guilty, and a trial before a jury resulted in a verdict in favor of appellee for $1500, for which amount the trial court, after overruling a motion for a new trial, entered judgment. The constitutionality of the Workmen's Compensation act of 1911 being involved, the circuit court of Jackson county allowed an appeal, which has been duly perfected direct to this court.

At the term at which this cause was submitted to the court an opinion was filed in *Deibeikis* v. *Link-Belt Co.* 261 Ill. 454, in which the constitutionality of the above act was considered and sustained, but since that opinion had not been published at the time this appeal was perfected the case was properly brought to this court. The questions raised by appellant as to the validity of the act were considered and decided in that case, and it is not necessary to re-state our views.

While appellant has devoted considerable space in its brief to a discussion of the sufficiency of the evidence to sustain the averment in the declaration that appellant had elected not to comply with the Workmen's Compensation act, on the oral argument counsel for appellant conceded that it was not at the time of the alleged injury, and never had been, operating under said act, so that in the disposition of the questions here involved it will be assumed as a fact that appellant had not elected to pay compensation for injuries in accordance with said act.

Appellant contends that if the defense of assumed risk is available to it, the circumstances of the injury complained of are such as to entitle appellant to a directed verdict in its favor, for the reason that, as a matter of law, appellee assumed the risk of injury from slipping upon the inclined metal chute upon which he was standing at the time he fell. Without reference to what view we might take of this question if the Workmen's Compensation act were not involved, we will consider and determine the question in view of that legislation.

Appellant contends that under the proper construction to be given to the Workmen's Compensation act the defenses of assumed risk, fellow-servant and contributory negligence are not affected by the act as to employers who have never elected to pay compensation in accordance with the provisions thereof. Its contention is that those defenses are only lost to such employers as have elected to go under and be governed by the act and afterwards elect not to be governed by said act, and then only as to such employees as had before that time elected to be governed by the provisions of the said act. Appellant contends that there is no method provided in the statute by which the employee can elect to be governed by the act unless the employer has previously exercised his right of election and determined to be governed by the act. This last proposition we regard as a correct interpretation of the act. It was manifestly not the intention of the legislature to put it in the power of the employee to compel the employer to adopt the act without regard to the employer's own wishes in the matter. We find no provision in the act which confers upon the employee the right to elect to be governed by the act in his relations to an employer who has rejected the act. We see no reason why this should be so, although appellee has alleged in his declaration that appellant was not under the act and that he was governed thereby. The latter part of this proposition was simply an averment of a legal impos-

sibility. This averment, however, may be regarded as surplusage and of no legal consequence whatever. Both parties to this cause seem to be under the impression that in some way appellee must be regarded as under the Workmen's Compensation act in order to cut off the common law defenses above referred to. This is clearly a misapprehension of the meaning of the act itself. A single provision of the act is all that is necessary to be referred to to answer the contention that appellee is himself under the act. Section 3 of the act provides that "no common law or statutory right to recover damages for injury or death sustained by any employee while engaged in the line of his duty as such employee other than the compensation herein provided, shall be available to any employee who has accepted the provisions of this act, or to anyone wholly or partially dependent upon him, or legally responsible for his estate." If this statute means what it says, then if appellee is under the provisions of the act he has no standing whatever to recover damages for his injury except as provided for in said act, either under the common law or the statute. If appellee is under the Compensation act, how can he, in view of the statute above quoted, maintain this action? The legislature has by language too clear for construction taken away the common law action as to all employees who have elected to be governed by said act. The existence or non-existence of the common law defenses depends upon the status of the employer in respect to the act and not the status of the employee. Section 1 of the act of 1911 provides that "if, however, any such employer shall elect not to provide and pay the compensation to any employee who has elected to accept the provisions of this act, according to the provisions of this act he shall not escape liability for injuries sustained by such employee arising out of and in the course of his employment because (1) the employee assumed the risks of the employer's business; (2) the injury or death was caused in whole or in part

by the negligence of a fellow-servant; (3) the injury or death was proximately caused by the contributory negligence of the employee," etc. The difficulty in understanding the above provisions results from the language *"to any employee who has elected to accept the provisions of this act."* It is a difficult matter to determine the meaning the legislature intended to convey by the use of this language. Plainly, the legislature in passing this act intended to provide a scheme by which the class of employers within its provisions should pay compensation for injuries received by employees without reference to the manner in which the injury was received. The value of the legislation would necessarily depend upon the extent to which employers elected to operate thereunder, and as an inducement to employers to be governed by said act those within its provisions who rejected the same forfeited the right to the enumerated defenses, and these defenses are lost without regard to the status of the employee. Any other construction would lead to an absurd result, as the employee can not be under the act while his employer is not under it. It is therefore necessary that the employer should have elected to be governed by the act before the employee can avail himself of its benefits. Still it is said the common law defenses are only lost to employers not under the act in favor of employees who are under it. The result of this reasoning would be that the common law defenses would not be lost to the employer in any case, unless we take the view suggested by appellant that they are lost in those rare and exceptional cases where the employer has been under the act and elected to abandon it, that his abandonment of the act would not take the then employees out from the provisions of the act, and in that case, if any such case ever happened, the common law defenses would be lost. But it must not be overlooked in this connection, if we suppose that to be the meaning of the law, that the common law defenses are only lost by the employer in fa-

vor of an employee who, by being under the act, has lost his right to bring a common law action under section 3. It was manifestly the intention of the legislature to make the act applicable to all employers within the enumerated employments, unless and until notice in writing of their election to the contrary is filed with the State Bureau of Labor Statistics. All of the employees to whom the act applied were likewise automatically made subject to the law. Both the employer and the employee in the specified employments became subject to the act without any affirmative action upon their part. The elective feature of the act is to be exercised to avoid being governed thereby, and not to cause the act to be applied in any given case. Section 1 provides that if the employer shall elect not to provide and pay the compensation provided by the act he shall lose his common law defenses. It will be noted that it is a negative election, and not an affirmative election, that is to be exercised both by the employer and the employee. When the entire scope of the legislation is considered, it is manifest that the legislature intended that the act should be effective as to all employers in the specified employments, and their employees, unless the notice prescribed was given. If we assume the law to be in force as against an employer and his employees at the time the act took effect, then the language in section 1 under consideration will be better understood. If the phrase, "any employee who has elected to accept the provisions of this act," be read by interpolating two negatives the meaning will be clear. The phrase would then read, "any employee who has not elected to not accept the provisions of this act." The language as it stands in the act seems to imply that some affirmative act was necessary on the part of the employee to bring him within its provisions, and herein lies the difficulty in construing the act.

In thus construing this act we are not going beyond the latitude allowed courts in the construction of involved

clauses, where it is necessary to interpolate words or clauses or strike out redundant and unnecessary language in order to give effect to the general legislative intent as the same appears from a consideration of the whole scope of the act. It is always necessary, first, to understand the subject of an act and the object to be accomplished by it. Once the subject matter is clearly ascertained and the general legislative purpose discovered, a key is thereby furnished which will enable one to correctly interpret all of the constituent and subordinate elements found in the act. Words may be modified, altered or supplied so as to obviate any repugnancy with the general legislative intention. (Sutherland on Stat. Const. sec. 347, and cases there cited.) Lust, in his comment on the Workmen's Compensation law of Illinois, published in 1912, points out that the suggestion that (as there is in the act no provision by which employees, without the prior affirmative act of the employer, can accept the act,) even if the employer should file a notice that he elected not to provide and pay compensation he would not be deprived of his common law defenses, was first raised by William Duff Haynie in a letter addressed to the Illinois Manufacturers' Association, but Mr. Lust does not lend his approval to that view. (See Lust's Workmen's Compensation Law, 7, 8.)

It necessarily follows from the views we have expressed that appellant cannot rely on the defense that the injury complained of resulted from a risk assumed by appellee. There is no contention here that the injury was the result of the negligence of a fellow-servant, and even if there were it would be unavailing.

Appellant in its brief has discussed the instructions at considerable length, but the most serious objection to the instructions as a series is, that the court did not adopt the appellant's view as to the construction of the Workmen's Compensation act. Those objections are disposed of by what has already been said in construing that act. The ob-

jections to the instructions other than of the class above referred to are not of a serious character.

Appellant also makes the point that the court erroneously permitted the fact to get to the jury that appellee was a poor man and had a family dependent upon him for support. This information came out in the following manner: When appellee was on the stand he testified to the nature and extent of his injuries and the time when he became able to return to work. On cross-examination appellant's counsel asked appellee if he did not, as a matter of fact, go to work at a date prior to the time when he stated that he was able to work, and in answer to this inquiry appellee said that he did, in fact, go to work before he was well, and explained, in substance, that his reason for doing so was that he was without any means to support his wife and children and for that reason had to go to work. We think that the testimony was proper to explain the apparent inconsistency in appellee's statement that he was not able to go to work and yet did, in fact, commence to work.

Appellant has urged some other objections in relation to the proof offered tending to show that appellant had given notice that it would not be governed by the Workmen's Compensation act. These objections are, however, of no importance in view of the admission of appellant, on oral argument, that it was not, and never had been, operating under said act.

Appellant's main contentions on the merits of this controversy are that the act of 1911 is unconstitutional. This contention has been fully answered by this court in *Deibeikis* v. *Link-Belt Co. supra.*

It is also contended that if said act is constitutional it should be so construed as not to deprive appellant of its common law defenses. This contention has had the consideration which we think its importance demands, with the result that we cannot accept appellant's view as to the proper interpretation of the act in question.

Substantially all of the other points appellant has urged in its able and exhaustive brief are related to and result from the insistence of appellant upon its two principal contentions. There are some other minor matters suggested and urged by appellant as reasons why the judgment below should be reversed and these have all had our consideration, and we find none of them of sufficient importance to justify an extension of this opinion to discuss them.

The judgment of the circuit court of Jackson county is affirmed.

*Judgment affirmed.*