FOURTH DISTRICT—JULY, 1914.        357

Bateman v. Carterville & Big Muddy Coal Co., 188 Ill. App. 357.

## Lucy Bateman, Administratrix, Appellee, v. Carterville & Big Muddy Coal Company, Appellant.

1. WORKMEN'S COMPENSATION ACT, § 2*—*evidence competent to prove employer's rejection of act.* A certified copy of the notice filed by the employer of his election not to come under the provisions of the Workmen's Compensation Act of 1911, J. & A. ¶¶ 5449 *et seq.,* is admissible as the best evidence to prove that the employer had rejected the provisions of the act. The original notice without proof of its being filed in accordance with the provisions of the act would be insufficient.

2. WORKMEN'S COMPENSATION ACT, § 2*—*time election remains in force.* Where an employer exercises his election not to come under the provisions of the Workmen's Compensation Act of 1911, J. & A. ¶¶ 5449 *et seq.,* by filing notice as provided by the act, his election remains in force until the notice is withdrawn.

3. DEATH, § 80*—*when giving of erroneous instruction on measure of damages reversible error.* In an action for wrongful death, the giving of an instruction directing the jury to allow plaintiff such damages as they may find from the greater weight of all the evidence that the widow and next of kin have suffered, not exceeding the sum claimed in the declaration, *held* reversible error, for the reason that the instruction did not limit the recovery to the pecuniary loss sustained and also because it directed attention to the amount claimed in the declaration.

4. MINES AND MINERALS, § 148*—*when admission of evidence relating to negligence not charged in declaration reversible error.* In an action to recover for the death of an employee in a mine alleged to have resulted from a willful violation of section 16 of the Mining Act, J. & A. ¶ 7490, in allowing mine cars to be provided with swinging hook couplings, permitting a witness to testify as to whether there were any lights on the motor, and whether there was anything between the cars to prevent them from getting loose if they became disconnected or uncoupled, *held* reversible error where there were no averments in the declaration charging negligence with reference to the lights or connections other than the coupling.

5. INSTRUCTIONS, § 110*—*when erroneous as inapplicable to the pleadings.* An instruction referring to "plaintiff's case" rather than to the averments of the declaration is erroneous as inapplicable to the pleadings.

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

Bateman v. Carterville & Big Muddy Coal Co., 188 Ill. App. 357.

6. MASTER AND SERVANT, § 800*—*when instruction erroneous.* In an action for the death of an employee, an instruction given for plaintiff *held* erroneous as allowing the jury to speculate what was a safe and an unsafe place to work.

Appeal from the Circuit Court of Williamson county; the Hon. A. E. SOMERS, Judge, presiding. Heard in this court at the March term, 1914. Reversed and remanded. Opinion filed July 28, 1914.

DENISON & SPILLER, for appellant; MASTIN & SHERLOCK, of counsel.

NEELY, GALLIMORE, COOK & POTTER, for appellee.

MR. JUSTICE HARRIS delivered the opinion of the court.

This action in case was brought by appellee against appellant to recover damages for the death of appellee's intestate, which occurred March 3, 1913. There was filed in the case a declaration consisting of thirteen counts. However, at the close of appellee's evidence, appellee withdrew the fourth count and the court instructed the jury to find the appellant not guilty under the second, third, sixth, seventh, ninth, tenth and eleventh counts. Therefore we will consider only the first, fifth, eighth, twelfth and thirteenth counts as amended. The first count charges common-law negligence; that the deceased was employed in the main north entry as a trackman; that appellant furnished him an unsafe place to work, in this, it required him to work at a certain point in the entry while its agents were driving loaded cars of coal up a steep incline, while the cars were insufficiently attached to each other and to the motor by open and defective links and hooks of iron, so that they were reasonably certain when slackened to become detached from each other and from said motor and run back down said incline; that appellant knew, or by the exercise of reasonable care could have known, of the open and defective

links and couplings of the cars; that deceased did not know of the open and defective couplings nor have equal means with appellant of knowing thereof; that while deceased was in the exercise of due care for his own safety, the cars became detached by reason of the open and defective links and couplings of the cars; that deceased did not know of the open and defective couplings nor have equal means with appellant of knowing thereof; that while deceased was in the exercise of due care for his own safety, the cars became detached by reason of the open and defective links, hooks and couplings and ran back down the incline; that appellant had made an election and filed the same with the Secretary of the State Bureau of Labor Statistics not to provide and pay compensation to its employees arising out of and in the course of employment, and had not withdrawn said election on the date deceased was killed.

The fifth count as amended is practically the same as the first amended count, except that it does not aver due care on the part of deceased and does not negative knowledge on the part of deceased of defective couplings. The eighth count is practically the same as the first amended count. The twelfth amended count is practically the same as the first amended count. The thirteenth or statutory count as amended averred, in addition to the formal averment, that appellant wilfully violated the provisions of section 16 of the Mining Act (J. & A. ¶ 7490) in that it wilfully allowed the mine cars to be provided with swinging open hook couplings while the same were then and there provided with more than one link on the end thereof for coupling purposes; that while deceased was at work in said entry a number of cars became detached because of there being more than one link on the end of said cars and the cars being provided with swinging open hook couplings, and ran to and against deceased, killing him; that appellant made an election in

360     APPELLATE COURTS OF ILLINOIS.

Bateman v. Carterville & Big Muddy Coal Co., 188 Ill. App. 357.

writing and filed the same with Secretary of the State Bureau of Labor Statistics not to provide and pay compensation to its employees arising out of and in the course of their employment and had not withdrawn said election on the date deceased was killed.

All of said counts averred that Thomas L. Bateman was killed on the third day of March, 1913, and left surviving appellee and three children as his heirs at law and averred damages in the sum of $10,000. Letters of administration were issued to appellee.

To the declaration as amended appellants filed a plea of not guilty, and upon trial of the issues so joined by a jury a verdict was returned finding appellant guilty and assessing damages at the sum of $5,000. Motion for new trial was overruled, judgment rendered on the verdict and this appeal taken.

The undisputed facts in this case are: That appellant on the third day of March, 1913, was operating a coal mine in Williamson county and that Thomas L. Bateman, a man thirty-five years of age, was employed by appellant as trackman, earning in that capacity the sum of $2.80 per day, and on that day was working on the track in the main north entry at a point about half a mile from the bottom of the shaft. The track in this entry was on a grade averaging about one per cent. but in some places the grade was steeper and in other places it was less than that. If cars were turned loose at a point some two or three hundred feet from the bottom where the incline began, they would run north and gain in speed until they reached the parting where the coal cars loaded with coal were assembled by the drivers from the various workings. The plan of operation was this: The pit cars were loaded in the various rooms by the miners, gathered up by drivers with mules and pulled out to the partings, where they were assembled and coupled together by a person employed for that purpose and known as the coupler. There they were taken by the motor and hauled in long trains

to the bottom of the shaft where they were loaded on cages and hoisted to the surface. The motor was passing up and down the main north entry continuously during working hours, hauling train loads of cars to the bottom from the parting and trains of empties from the bottom to the parting. Mr. Bateman had been regularly employed as trackman on the track where the motor ran. It was his duty to keep the track in proper repair and condition. When a trip of cars would start from the parting it was under the control of two employees, the motorman, who handled the motor, and the trip rider, who rode on the motor and put sand on the track when needed and attended to the switching. In returning to the parting from the bottom with a load of empties, the trip rider would ride on the back end of the cars.

At the time of the accident the motor and a trip of twelve or thirteen loaded pit cars were going from the parting to the bottom; the motorman noticed Mr. Bateman standing beside the track as he passed him, and the trip went on until it reached the top of the incline; the motor and four cars had gotten to the top and was on level ground when the fifth car from the front end became uncoupled from the the fourth car, and the rear eight cars stopped and started to run back down the incline. The motorman discovered that the cars had become uncoupled by his engine speeding up and he at once stopped, jumped off the motor and ran back to the cars and tried to hold them with his hands, but they already had some momentum and he could not hold them and had to let them go; he returned to the motor and went on to the bottom about two or three hundred feet with the four cars, and informed the bottom man that the trip had come in two; the bottom man went to the telephone and telephoned back down to the parting that the trip of cars was coming back down the track. The boss driver was on the parting and received the telephone message; he

at once informed the assistant manager, who was there, and he gave the warning to the other men at the parting and all got in the clear. Soon afterwards seven of the runaway cars reached the parting where they ran into other cars standing on the track and stopped. The motorman coupled onto another load of empties at the bottom and started to the parting at once; on reaching a certain part of the entry he found that the fifth car from the motor had become detached from the other seven that ran away and had jumped the track and stopped. From all the circumstances it appears that Mr. Bateman saw or heard the runaway trip coming down the entry and he got out of the way and allowed the first seven cars to pass, and they went on to the parting. As soon as they passed him, he evidently stepped on to the track behind them thinking they had all passed, and was struck by the other car that had become loose from the seven and was run over and killed; his body was found lying across the track within about eight feet of the car; he had been run over by the car causing it to leave the rails and run into the rib of the entry and stop; his head was crushed and his limbs were broken and he was dead when found.

The disputed facts, in so far as material to a proper consideration of this case, will be taken up and discussed in their proper order.

A reversal of this case being necessary under the law, the questions of law and facts will be divided into three parts or branches:

(1) Those questions that should be passed upon to assist in another trial of the case.

· (2) Those questions which in the opinion of the court constitute reversible error.

(3) Those questions while error would not, standing alone, be held to be reversible error and upon another hearing would not be likely to appear in the record.

The first and second of these divisions or branches will be discussed and disposed of accordingly. We regard it unnecessary to extend this opinion by either passing upon or referring to the errors coming under the third branch or division.

Appellant says that it was error for the court to deny its motion for peremptory instruction. This alleged error is predicated upon the assumption by appellant that it was operating its mine at the time of the accident under the Act approved June 10, 1911, in force May 1, 1912, known as the "Workmen's Compensation Act." (J. & A. ¶¶ 5449 et seq.)

If this assumption, from an examination of the law and facts, proves to be true, the peremptory instruction should have been given, as the facts so far as material are not in dispute.

The only notice that is claimed by appellee to have been given by appellant that it would not provide compensation and come under said Act is of date March 29, 1912, and filed with the Secretary of the Bureau of Labor Statistics of the State of Illinois, April 4, 1912.

It is argued by appellant that this notice of rejecting the provisions of this Act was for the remainder of the year 1912 only, and unless a further notice was given sixty days previous to the first day of January, 1913, appellant automatically on January 1, 1913, went under its provisions by operation of law.

It is further argued that the copy of the notice introduced in evidence was incompetent. If appellant went under provisions of the act automatically or if there was no competent evidence showing appellant had rejected the act, peremptory instruction should have been given and would bring to an end further discussion of the errors assigned.

The question whether or not appellant was after January 1, 1913, and on the day of the accident under

the provisions of the Compensation Act of 1911, is a matter of construction to be put upon the act.

The Statute reads as follows:

"Section 1. Any employer covered by the provisions of this act may elect to provide and pay compensation for injuries, * * * and thereby relieve himself from any liability for the recovery of damages except as herein provided. If, however, any such employer shall elect not to provide and pay compensation * * * he shall not escape liability because. * * *

(A)   Every such employer is presumed to have elected to provide and pay compensation according to the provisions of this act, unless and until notice in writing of his election to the contrary is filed with the State Bureau of Labor Statistics.

(B)   Every employer within the provisions of this act failing to file such notice shall be bound hereby as to all his employees who shall elect to come within the provisions of this Act until January 1st of the next succeeding year and for terms of each year thereafter." (J. & A. ¶ 5449.)

It has become a part of this law, by decision of the Supreme Court, that at the outset and until notice was filed to the contrary, employer and employees within the act, by silence, accept it and automatically, by operation of law, come under its provisions and are bound by it until such times and in such manner as the law provides they could give notice to the contrary. This does not mean that it is necessary to accept it at the beginning of each year, but, once accepted, that acceptance is good until the proper notice is given not to be bound by it.

Having elected to come under its provisions as long as such election remains in force, the act is effective as to parties making election, and in case both employer and employee elect to come under its provisions the act itself becomes a part of the contract of employment. *Deibeikis v. Link-Belt Co.,* 261 Ill. 454.   The

statute does not provide how or when by an election made by employer rejecting the act he may again come under it. To hold that the notice he gives is good as a rejection for only a limited time is not authorized by the statute, and to so hold would be by reading into the statute something that does not appear, viz., this notice of rejection is to be binding until another or further notice is given January 1st, following.

This construction, unless made necessary by the statute, would not be in accord with the acts that bind a party making a statement or giving a notice. Where a notice or statement affects the contractual relations of parties made by one of the parties, he is held by such statement until it is withdrawn or otherwise disposed of. In this case the notice given stood as a negative election to be acted upon by all interested parties until withdrawn. The fact that the same Statute of 1913 makes this provision does not give to the Statute of 1911, a different meaning, but it would appear that the Legislature was intending to give it a construction that could not be misunderstood.

There is no provision in the act which confers upon the employee the right to elect to be governed by the act in his relations to an employer who had rejected it.

The notice that the employer had rejected the provisions, on file at the place provided by law, good until withdrawn, as fixing the status of the parties, is the most reasonable and logical construction, and the court did not commit error in holding that appellant was not operating its coal mine in question at the time of the accident under the provisions of the Compensation Act of 1911, it being the intention of the Legislature that there could be but two elections, one to come under the act, and the other to reject it, the first exercised by silence and the other by a negative elec-

tion. The second or negative election can only be made in the manner and at the time provided by the act for the protection of the rights of thsoe under the act, but when such negative election is exercised it is for such a period of time as the parties so electing may desire; and until such an election is withdrawn, as an inducement to employers to operate under the act, those within its provisions who rejected it forfeited the right to the defenses enumerated therein, and these defenses are lost without regard to the status of the employee. *Dietz v. Big Muddy Coal & Iron Co.,* 263 Ill. 480, 5 N. C. C. A. 419.

The provisions of the act with reference to the sixty days' notice is for the benefit of those having rights which have accrued to them under the act, or which might accrue before, under the law, they could change their status under the act. The rights of all interested parties, where the employer is operating under a notice rejecting the act, are at all times fixed by the act and under the law, and it is immaterial in point of time when it withdraws its negative election.

Upon the question of directing a verdict as well as admitting improper evidence, the admissibility of the certified copy, filed with the Bureau of Labor Statistics April 4, 1912, offered in evidence by appellee and admitted by the court is to be disposed of. Under section 1 of the act, (A) "Every such employer is presumed to have elected to provide and pay compensation according to the provisions of this act, unless and until notice in writing of his election to the contrary is filed with State Bureau of Labor Statistics."

Therefore, appellee, to have a right to maintain this suit, must prove that appellant had rejected the act, and to do this must first show appellant had filed such a notice with the Bureau named in the act. The original notice without proof of the filing in accordance with the act would not be sufficient. The objection to the notice, that the notice applied to 1912 and not to

1913, we dispose of with the reasons given for holding that at the time of the accident appellant was operating under the negative election made and not withdrawn.

The objection that the copy is not the best evidence is without merit because we may assume that the Legislature, by providing that the original was to be filed in one of the departments of State created by it, intended to make it a public document subject to the protection and respect such documents are to receive. That would preclude any argument that it is a document of interest only to employer and employee and ready to be produced by either in court at will or upon notice.

The rule is if this became a public document by law, whether judicial or nonjudicial, one which the public has the right to inspect, and one which could not, without inconvenience to the public interests, be removed from its place of custody may be proved by copies exemplified or otherwise duly authenticated. Burr Jones Law of Evidence, vol. 2, sec. 534. This being the law, this copy was not secondary evidence but the best evidence and needed no foundation to support it. Under the common law, without statutory provision, was this notice properly authenticated and entitled to admission in evidence?

This act makes the filing of a notice with the Bureau of Labor Statistics prima facie evidence of its execution and by analogy would give like effect to a certified copy thereof, certified to by the person charged with the custody of the original. The notice in this case and its filing with the proper department of State the appellant does not by pleading deny the execution of the notice or filing of same thereby waiving proof either of execution or filing of same.

The notice and the certificate offered in evidence were the best evidence and admissible under the pleadings. Under the contention of appellant as to the ad-

mission of improper evidence, appellee, over the objection of appellant on redirect examination, asked witness Lloyd Murphy whether or not on this trip of cars there were any lights except what were on the motor. Answer. "There were no lights except those on the motor." Again, with witness Sweet, appellee inquired what was between the cars on this trip to keep the cars from getting loose if they became disconnected or uncoupled. Answer. "There wasn't anything."

The averments of the declaration is the notice to defendant of the charges he has to meet. He is not presumed to meet other or different charges, of statutory violations especially. Appellee concedes this evidence incompetent, but insists it is not reversible error. Our Supreme Court has said: "A plaintiff must recover, if at all," upon the specific acts of negligence alleged in his declaration, "and in the application of this rule to actions for negligence plaintiff cannot allege a specific act of negligence and recover upon proof of negligence of a different character." *Chicago & E. I. R. Co. v. Driscoll,* 176 Ill. 336.

This was not evidence adduced by a witness attempting to explain, but a deliberate attempt to bring forth before the jury evidence of other and further negligence upon which the jury might base a finding. It does not belong to that class of cases cited by appellee which hold although error not reversible error. The appellant complains and assigns as error the giving of appellee's fourth, fifth and sixth instructions.

The fourth instruction is on the measure of damages and the only instruction of the series on that subject, and directs the jury to allow appellee such damages as the jury may find from the greater weight of all the evidence that said widow and next of kin have suffered, not exceeding sum claimed by plaintiff in her declaration.

This instruction is in violation of the statute which limits the recovery to the pecuniary loss of the widow.

and heirs at law, and is the only evidence to be considered on that subject. It is further subject to the objection of keeping before the jury the amount claimed in the declaration, $10,000, which is not evidence. Appellee concedes this instruction is not in line with authorities, but says it is not reversible error. It will not be necessary to extend this opinion upon this error, but we will adopt what has been said by the Supreme Court in the case of *Illinois Cent. R. Co. v. Johnson*, 221 Ill. 47 and in the case of *Pate v. Gus Blair Big Muddy Coal Co.*, 158 Ill. App. 578, and although in a recent case the Supreme Court held this instruction was not reversible error, it was because it was accompanied by other instructions upon the same subject which correctly stated the law.

The fifth and sixth instructions did not correctly state the law applicable to the pleadings and should not have been given, the fifth referring to plaintiff's case. The plaintiff's case should be confined to the averments of the declaration, and where the declaration sets out in what particular the instrumentalities were unsafe, the jury should not be allowed to speculate what was a safe and what was an unsafe place to work, as was done in the sixth given. On the fifth, see *City of Chicago v. Fields*, 139 Ill. App. 250. On the sixth, see *Nordhaus v. Vandalia R. Co.*, 242 Ill. 166.

The objection as to remarks of counsel is well taken, and while of itself might not reverse this case they materially assist. It is a matter of common knowledge that before the average jury the individual against a corporation is not required to make any sentimental appeal to secure a verdict upon the facts, if he has any facts, and why their representatives will persist in this kind of practice is beyond explanation to the average and distinterested mind. The corporation is entitled to no more but to as much consideration in court as any other party to a law suit. The rules of court and

ethics of the profession require courteous treatment of parties and witnesses.

The remarks made by counsel for appellee in the argument of the case are in line with those frequently condemned by our courts, and if counsel wish to protect and sustain verdicts it is with them to prevent errors and complaints of this kind. *Pate v. Gus Blair Big Muddy Coal Co.*, 158 Ill. App. 578; *Parlin & Orendorff Co. v. Scott*, 137 Ill. App. 454; *Wabash R. Co. v. Billings*, 212 Ill. 37.

Therefore, on account of the errors above referred to and sustained, judgment will be reversed and the cause remanded.

*Reversed and remanded.*