## David Strom, Appellee, v. Postal Telegraph-Cable Company, Appellant.

## Gen. No. 6,243.

1. APPEAL AND ERROR, § 1265*—*when presumed that constitutional question not involved.* Where, after a constitutional question has been treated in briefs and arguments of counsel in a case before the Supreme Court, that court transfers the case to the Appellate Court, the latter court must assume that no constitutional question is involved.

2. WORKMEN'S COMPENSATION ACT, § 12*—*what plaintiff must aver and prove in action at common law.* Where an employer elects not to come under the Workmen's Compensation Act, his negligence, to form the basis of a recovery in an action at common law, must be averred and proved by the plaintiff.

3. WORKMEN'S COMPENSATION ACT, § 2*—*what is effect of election by employer not to come under act.* An employer who has elected not to come under the Workmen's Compensation Act is, when sued at common law by an employee, deprived of the entire defense of assumed risk, both known and unknown, ordinary and extraordinary.

4. WORKMEN'S COMPENSATION ACT, § 2*—*what is effect of election by employer not to come under act.* The Workmen's Compensation Act did not, by depriving an employer who should elect not to come under it of the common-law defense of assumed risk, thereby make him an insurer, since his negligence must be proved to make him liable for an injury to an employee.

5. WORKMEN'S COMPENSATION ACT, § 12*—*when instructions' in action at common law correct.* In an action at common law by an

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

employee against his employer, who had elected not to come under the Workmen's Compensation Act, instructions *held* to properly inform the jury that a verdict against the defendant could not be rendered if the evidence failed to show that its negligence was the proximate cause of the plaintiff's injury.

6. WORKMEN'S COMPENSATION ACT, § 2*—*when master electing not to come under act liable for negligence.* In an action by a lineman against an employer who had elected not to come under the Workmen's Compensation Act, for injuries sustained as a result of his spur tearing out of a pole which he was climbing, thus causing him to fall, *held* that if the defendant was negligent in not providing the pole with iron spikes it would be liable, notwithstanding that the danger of climbing the pole with spurs was obvious to the plaintiff.

7. MASTER AND SERVANT, § 691*—*when evidence sufficient to show negligence of master.* In an action at common law by a lineman for injuries resulting from a fall from a pole alleged to have been caused by his spur tearing out of the pole, owing to its weakened condition, evidence *held* to justify a finding that the defendant, his employer, was negligent in not providing iron spikes or other appropriate means of climbing the pole other than the use of spurs.

8. MASTER AND SERVANT, § 789*—*when instruction erroneous as invading province of jury.* In an action at common law by a lineman against his employer for injuries sustained from a fall alleged to have been caused by the plaintiff's spur tearing out of a pole he was climbing, an instruction that the defendant owed the plaintiff no duty to place steps upon such pole, *held* properly refused, as such question of duty was for the jury and not for the court.

9. EVIDENCE, § 74*—*what admissible as part of res gestæ.* In an action by a lineman for injuries sustained as the result of a fall from a pole alleged to have been caused by his spur tearing out of a decayed place in the pole, evidence showing that the pole was not provided with spikes, *held* admissible as part of the *res gestæ.*

10. MASTER AND SERVANT, § 618*—*when refusal of evidence as to custom not erroneous.* In an action by a telegraph lineman for injuries resulting from a fall from a pole, where there was no question of a hidden defect therein, and the jury were instructed that the defendant employer would not be liable for injuries resulting from a hidden defect in the pole which it could not have reasonably discovered and repaired, the refusal to admit evidence of a general custom among companies operating pole lines to make no independent inspection of poles other than that made by linemen themselves, *held* not error.

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

11. MASTER AND SERVANT, § 800*—*when refusal of instruction proper.* In an action by a lineman for injuries resulting from a fall from a pole alleged to have resulted from the plaintiff's spur tearing out of a decayed place therein, *held* that the refusal of an instruction that there was no duty imposed on the defendant employer to inspect the pole was proper.

12. MASTER AND SERVANT, § 779*—*when refusal of instruction not error.* On the issue whether an injury to a lineman was caused by a certain defect in a pole which he was climbing, where the evidence thereon was not all circumstantial, *held* that the refusal of an instruction that to entitle the plaintiff to recover it was necessary not only that the circumstances should all concur to show that the injury was caused by such defect, but that they were inconsistent with any other rational theory, was not error.

13. DAMAGES, § 123*—*when verdict for personal injuries not excessive.* A verdict of $3,000 awarded a telegraph lineman for permanent injuries, resulting from a fall from a pole, involving a thickening and stiffening of an ankle and shortening of a limb, *held* not excessive.

Appeal from the Circuit Court of Will county; the Hon. ARTHUR W. DESELM, Judge, presiding. Heard in this court at the October term, 1915. Affirmed. Opinion filed May 24, 1916. *Certiorari* denied by Supreme Court (making opinion final).

JACOB E. DITTUS and JOHN H. SAVAGE, for appellant.

J. W. D'ARCY, for appellee.

MR. JUSTICE CARNES delivered the opinion of the court.

David Strom, the appellee, March 11, 1914, was in the employ of the appellant company as a lineman. His foreman ordered him to climb a telegraph pole in a public street in the City of Joliet for the purpose of removing one of the wires. Appellee was an experienced lineman, and used a pair of metal spurs such as are ordinarily used by linemen in climbing telegraph poles. He climbed about twenty-five feet from the ground and fell, suffering an impacted fracture of the lower base of the tibia of his right leg. He brought

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

Vol. CC 28

this action to recover for that injury and had verdict and judgment for $3,000. The company prosecutes this appeal.

The declaration contained three counts. The first charged failure of the defendant to furnish a safe place to work and failure to exercise reasonable care to furnish wooden telegraph poles in reasonably safe condition and repair to sustain the weight of the plaintiff when climbing, standing or working with metal spurs. The second charged failure to inspect, repair and maintain reasonably safe and sound wooden telegraph poles so as not to injure the plaintiff when climbing, working or standing on spurs inserted in said poles, and that the pole in question was rotten, decayed, impaired, defective and unsafe for the plaintiff to work upon. The third charged a failure to provide reasonably safeguards on telegraph poles, or to place a ladder, steps or spikes in the poles on which linemen were required to climb so as to protect, support and sustain linemen when working and climbing in the service of the defendant; that the only means provided by defendant by which the plaintiff could ascend the poles was by the use of a metal spur strapped to each leg, and that when plaintiff was about to seat himself on the pole by the use of such spurs, and relying upon the pole to sustain his weight, and without knowledge of the defective condition of the wood in the pole, the wood underneath one of plaintiff's spurs broke out and gave way on account of the unsafe and decayed condition of the wood.

Each count alleged that the defendant was not operating under the Workmen's Compensation, and Employers' Liability Law of 1913. The defendant pleaded the general issue.

On the trial it was admitted that the defendant was not operating under the Workmen's Compensation Act. It appeared that the pole was about forty-two

feet out of the ground, eighteen inches in diameter at the surface, and tapered towards the top, and was about twelve and one-half inches in diameter at the point from which the plaintiff fell. It was a Michigan cedar pole in use since the line was built in May, 1902. On the top of the pole were three sets of double cross-arms, occupying a space of about four and one-half feet. Plaintiff's objective point was the top of the pole. About ten feet below the lower double cross-arm there was a single cross-arm. Plaintiff climbed to a point where he could reach with his hand this single cross-arm, having his right spur set in the pole. He reached up with his left hand to grasp the pole above the lower cross-arm, at the same time lifting his left foot. His right spur gave way and he slid down the pole with his arms around it, striking the ground first with his right foot. There is evidence tending to show that a chunk of the pole eight or ten inches long and perhaps two inches wide broke out from the pole at the point where the spur was inserted. Appellant's theory of the accident, which there is evidence tending to prove, is that there was a knot in the pole where the plaintiff inserted the right spur; that there were usually in poles knots that were hard so that it was difficult to drive a spur into them, and that workmen were usually careful to avoid such knots; that the accident happened because of the knot and the failure of care on the part of the plaintiff to avoid it. The plaintiff's theory is that the outside of the pole was much scarred and broken by constant climbing and therefore unsafe; that a piece of the wood, because of this weakened condition, gave way at the point where the spur was inserted and caused the accident. There is no question that the outside of the pole to the depth of the penetration of a spur was much marked and weakened, otherwise the pole was sound.

Section 3 of the Workmen's Compensation Act of 1913 [Cal. Ill. St. Supp. 1916, ¶ 5475 (3)] provides that

in actions to recover damages against an employer who shall elect not to provide and pay compensation according to the provisions of the act it shall not be a defense that, first, the employee assumed the risk of the employment; second, the injury or death was caused in whole or in part by the negligence of a fellow-servant; or, third, the injury or death was proximately caused by the contributory negligence of the employee. Appellant, while conceding that its business brought it within the provisions of the Compensation Act, takes the position that nevertheless the plaintiff necessarily agreed to assume all risks which are ordinarily and usually incident to the service, and if the injury was the result of one of the risks ordinarily incident to the work in which plaintiff was engaged, then he cannot recover. It offered instructions based on that theory, which were refused by the trial court, and prosecuted its appeal to the Supreme Court because of its contention that the part of the Employers' Liability Act abolishing the defense of assumed risk is unconstitutional. The Supreme Court [271 Ill. 544] transferred the case to this court, therefore it must be assumed no constitutional question is involved, and we must disregard that part of the brief and argument first filed in the Supreme Court and now filed here that is devoted to that question. Appellant, however, says that at common law there are two classes of risks which are assumed by the servant: First, those risks which are not created by the master's negligence, being the ordinary risks of the service; and, second, those risks which are created by the master's negligence, or extraordinary risks, the assumption of which is dependent wholly or in part on the servant's knowledge of the existence of the danger. That to say the servant does not assume the former class of risks—the usual and ordinary hazards of the business—is to say that the master is an insurer, that there can be no recovery against the master unless he is guilty of some breach of duty owing by

him to the servant; that the ordinary risks are assumed by the servant, which means that the master is not an insurer against injuries resulting from dangers which cannot be removed by the exercise of due care upon his part. While the statute in question creates a liability on the part of the master regardless of his negligence or want of negligence, if he elects to come under its terms, we have no doubt that in cases like the present one, where the master rejects the provisions of the act, his negligence must be averred and proven to warrant a recovery. The provisions of the act above quoted simply exclude certain defenses, among them assumed risk. In considering the defense of assumed risk in common-law actions, the courts have often distinguished between ordinary and extraordinary risks, and have discussed extraordinary risks as those created by the negligence of the master, and used the terms non-negligent and negligent risks, also sometimes classifying risks as "known" and "unknown." An exhaustive discussion and citation of authorities on this subject is found in a note in 28 L. R. A. (N. S.) page 1218. But the question in the present case is whether the Legislature intended to exclude the entire defense of assumed risk regardless of classifications and subdivisions of the subject. We are of the opinion that it did, and that in so doing it did not make the master an insurer because it is still necessary to show him negligent. In the cases of *Streeter v. Western Wheeled Scraper Co.*, 254 Ill. 244 [1 N. C. C. A. 828]; *Deibeikis v. Link-Belt Co.*, 261 Ill. 454 [5 N. C. C. A. 401]; *Crooks v. Tazewell Coal Co.*, 263 Ill. 343 [5 N. C. C. A. 410]; *Dietz v. Big Muddy Coal & Iron Co.*, 263 Ill. 480 [5 N. C. C. A. 419]; and *Bell v. Toluca Coal Co.*, 272 Ill. 576, the Supreme Court considered questions arising in denying masters the defense of assumed risk. In the first mentioned case there is an extensive discussion of the doctrine of assumed risk. We find nothing in those cases upon which to base a theory that

the Legislature only intended to exclude the defense in one class of assumed risks. To say that the servant assumes risks that do not arise from the master's neg- ligence adds nothing in the present case to the statement that the master is not liable if not negligent. The jury were instructed that negligence on the part of the defendant must be proven as an affirmative fact by a preponderance of the evidence; that the defendant was not an insurer of the plaintiff against injury while in its employment and that they could not find a verdict against the defendant merely because the plaintiff was injured, that they could not find the defendant negligent merely because the spikes attached to the plaintiff's climber slipped out of the pole; that if they believed from the evidence that the injury to the plaintiff was the result of an accident and that the defendant was not the cause thereof, they should find the defendant not guilty; that if they found the injury was caused by plaintiff's negligence and not by the negligence of the defendant, they should find the defendant not guilty; that if they believed the accident occurred because of hidden defects in the pole not known to defendant and that could not be known to defendant by the exercise of ordinary diligence in time to avoid the injury, then they should find the defendant not guilty; that they could not find the defendant guilty even if they found the pole was defective in some respects unless they further found from the evidence that such defect was the proximate cause of the injury, and that the defendant knew of such defects, or by the exercise of ordinary care should have known of the same in time to avoid the injury; that if the injury was the direct and natural result of an accident and not the direct and natural result of the defendant's negligence, they must find for the defendant. The instructions left no ground for a verdict against the defendant if the evidence failed to show its negligence as the proximate cause of the injury. Nothing of legitimate benefit

to the defendant could have been obtained by trying to inform the jury of distinctions and differences in the rules of assumed risk. The risk was that the outside of the pole, because of its scarred and weakened condition, might splinter and give way under the pressure of the spur. There was no special inspection required. The defect was obvious and as well known to the plaintiff as to the defendant. If the defendant was under no duty to the plaintiff to remedy this defect it is not liable. If the defect should have been remedied by placing spikes in the pole on which to climb, or in some other practicable way, then the defendant was liable, notwithstanding the danger was obvious. And the plaintiff might have been held, in the absence of the statute, to have assumed the risk and notwithstanding he might by the exercise of greater care have safely ascended the pole. We may assume that appellant was not liable if the accident was occasioned by a knot in the pole that it in the exercise of ordinary care was not required to guard against. There was sufficient evidence that it was caused, as appellee suggests, by the splintering of the pole, to forbid a court's disturbing the verdict of a jury based on that finding of fact. It appeared that most of defendant's other poles in the vicinity had steps or spikes inserted upon which the workmen could climb. And while it also appears that the primary object of inserting such steps was not that of safety and very likely an unscarred pole could as safely be climbed without them, yet we think the jury were justified in finding that because of the weakened condition of the outside of the pole reasonable safety required the master to provide some such means of climbing.

Appellant asked the court to instruct the jury that it was not the duty of the defendant to place steps in its poles, which the court refused, and it is argued that this was error, and that the court also erred in permitting evidence to be introduced showing that the pole in

question was not stepped. It is a sufficient answer to these objections that evidence was necessarily heard on the condition of the pole as part of the *res gestæ,* and such evidence would necessarily disclose whether there were steps upon it, and that it was not for the court to determine, as matter of law, whether steps should have been placed upon the pole. It was for the jury to determine whether the pole was reasonably safe, and the court could not instruct them what construction was or was not sufficient for that purpose.

Appellant also contends that the court erred in refusing to admit evidence of the general custom among companies operating pole lines to make no independent inspection of its poles other than that made by the linemen themselves, and erred in refusing to instruct the jury that no duty of inspection rested on the defendant. This matter could only be important if some hidden defect of the pole had been in question. No such defect was under consideration. The jury were instructed that the defendant was not liable for hidden defects which it could not reasonably discover and repair. If it had been a question of hidden defect, we know of no authority permitting a court to say to a jury, as matter of law, what specific thing the defendant should have done or need not do to discover and repair it. Where all the facts of a situation have been ascertained and made intelligible to the jury, it is not a question for expert opinion whether the condition is safe or unsafe, nor should evidence be heard of what specific things other men do or are in the habit of doing under such circumstances. (*Bell v. Toluca Coal Co., supra,* and authorities there cited.) Appellant asked the court to instruct the jury that before they could find that the injury of the plaintiff was caused by a defect in the pole it was necessary not only that the circumstances should all concur to show that the injury was caused by such defect, but that they are inconsistent with any other rational conclusion. This

instruction was based on the theory that the evidence was entirely circumstartial, which was not the fact, therefore the court for that reason, if for no other, did not err in refusing that instruction.

Appellant in its brief states five points relied on for the reversal of the judgment. What we have said disposes of the questions presented in its statement of those points. There is a suggestion in the argument that the verdict is excessive. The injury was permanent, resulting in a thickening and stiffening of the ankle,.and a shortening of the limb about an inch. We are of the opinion that the verdict was not excessive. Finding no substantial error in the record the judgment is affirmed.

*Affirmed.*